```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

**CANDELA MANAGEMENT GROUP, INC.,**
*et al.*,

       **Plaintiffs,**

  **vs.**                                     **Civil Action 2:08-CV-1138**
                                             **Judge Sargus**
                                             **Magistrate Judge King**

**THE TACO MAKER, INC.,** *et al.*,

       **Defendants.**

## OPINION AND ORDER

Plaintiffs seek to rescind development and franchise agreements between plaintiffs and defendant The Taco Maker, Inc. ("Taco Maker") and personal guarantees because of defendants' alleged failure to fully disclose material aspects of the agreements and alleged breach of the agreements.  Plaintiffs also seek monetary relief.  Plaintiffs assert claims under the Illinois Disclosure Act of 1987, 815 Ill. Comp. Stat. § 705/1 *et seq.,* the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01 *et seq.*, the Ohio Business Opportunity Purchasers Protection Act, O.R.C. § 1334.01 *et seq.,* and South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.*  Plaintiffs also assert common law claims of negligent misrepresentation, fraud and breach of contract and of the covenant of good faith and fair dealing. Defendants assert a counterclaim for amounts allegedly due under the contracts.

This matter is before the Court on defendant Taco Maker's[1] *Motion to Transfer Venue*, Doc. No. 13.[2]  For the reasons set forth below, the *Motion to Transfer Venue* is **DENIED**.

I.   **BACKGROUND**

The *First Amended Complaint* alleges that, in 2007, plaintiffs considered investing in the rights to Taco Maker franchises.  *First Amended Complaint*, ¶ 16.  Taco Maker had a strong reputation in the Mexican-style fast food market in Puerto Rico and plaintiffs "were eager to capitalize" on Taco Maker's reputation in the continental United States.  *Id*.  Before they entered into an agreement, Taco Maker provided to plaintiffs a Uniform Franchise Offering Circular ("UFOC"),[3] which contained certain representations.  *Id*. at ¶¶ 17-18.

   A.   **Development Agent Agreements**

In March 2008, plaintiffs "entered into three Development Agent Agreements with Taco Maker, one each for the States of Illinois, Ohio, and South Carolina" (collectively, the "Development Agent Agreements").  *Id.* at ¶ 19.  The Development Agent Agreements provide in pertinent part:

---

[1] In addition to Taco Maker, plaintiffs name the following four individuals as defendants: Miguel D. Lausell, Tomas Torres, Carlos M. Budet and Rita M. Torres (collectively, "the individual defendants"). *First Amended Complaint*, Doc. No. 9.  However, only Taco Maker moves to transfer venue.

[2] Taco Maker has also filed a motion to stay pending arbitration.  Doc. No. 17.  The parties agreed that the Court should resolve the *Motion to Transfer Venue* prior to the motion to stay.  *Preliminary Pretrial Order*, Doc. No. 41.

[3] "A UFOC is a document that federal law and certain state laws require that a franchisor provide to prospective franchisees for the purpose of making a full and fair disclosure of the material facts of the franchise being offered."  *Id*. at ¶ 17.

2

**ARTICLE 21**
**APPLICABLE LAW**

21.1  This Agreement takes effect upon its acceptance and execution by Franchisor [Taco Maker].  This Agreement shall be interpreted and construed under the laws of Puerto Rico except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. § 1051 et seq.).

21.2  Except as otherwise expressly provided by applicable state law or regulation, the parties agree that any action brought by either party against the other shall be brought in Puerto Rico and the parties do hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.

*          *          *          *

**ARTICLE 22**
**ARBITRATION**

*          *          *          *

22.2  EXCEPT AS SPECIFICALLY OTHERWISE PROVIDED IN THIS AGREEMENT, THE PARTIES AGREE THAT ALL CONTRACT DISPUTES THAT CANNOT BE AMICABLY SETTLED SHALL BE DETERMINED SOLELY AND EXCLUSIVELY BY ARBITRATION UNDER THE FEDERAL ARBITRATION ACT AS AMENDED AND IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION OR ANY SUCCESSOR THEREOF.  ARBITRATION SHALL TAKE PLACE AT AN APPOINTED TIME AND PLACE IN PUERTO RICO.

*          *          *          *

Exhibits B, C and D, attached to *First Amended Complaint*.

   **B.   Franchise Agreements**

   On May 13, 2008, plaintiffs, allegedly relying on the UFOC's representations, entered into two Franchise Agreements with Taco Maker for locations in Dillon and Gafney, South Carolina (collectively, "Franchise Agreements").  *Id*. at ¶ 28.  The Franchise Agreements provide in pertinent part:

**ARTICLE 29**
**APPLICABLE LAW AND VENUE**

29.1   This Agreement takes effect upon its acceptance and execution by the Franchisor [Taco Maker], and shall be interpreted and construed under the laws of Puerto Rico, which law shall prevail in the event of any conflict of law.

\*              \*              \*              \*

29.4   Franchisee [Candela] acknowledges that he has and will continue to develop a substantial and continuing relationship with Franchisor.  The parties herein irrevocably agree and consent that in any action or proceeding hereinafter brought by either party to this Agreement, each will submit to the exclusive jurisdiction and venue of any local, state or federal court located in Puerto Rico.

\*              \*              \*              \*

**ARTICLE 30**
**ARBITRATION**

30.2   EXCEPT AS SPECIFICALLY OTHERWISE PROVIDED IN THIS AGREEMENT, THE PARTIES AGREE THAT ALL CONTRACT DISPUTES THAT CANNOT BE AMICABLY SETTLED SHALL BE DETERMINED SOLELY AND EXCLUSIVELY BY ARBITRATION UNDER THE FEDERAL ARBITRATION ASSOCIATION OR ANY SUCCESSOR THEREOF.  ARBITRATION SHALL TAKE PLACE AT AN APPOINTED TIME AND PLACE IN PUERTO RICO.

Exhibits E and F, attached to *First Amended Complaint*.

**C.   The Instant Litigation**

Plaintiffs allege that they "discovered that Taco Maker failed to adequately disclose material facts" related to the Development Agent Agreements and Franchise Agreements.  *Id*. at ¶¶ 31-38.  Plaintiffs allege that they would not have entered into any of these agreements "had there been a full and fair disclosure of all the material terms." *Id*. at 35, 38.  Plaintiffs further allege that Taco Maker "failed to live up to its contractual obligations under the Franchise Agreements[,]" effectively terminating plaintiffs' Taco Maker

4

franchises and causing plaintiffs "severe losses[.]"  *Id*. ¶¶ 39-42.

### D. Parties and Venue Dispute

On December 2, 2008, plaintiffs filed the instant action, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *First Amended Complaint*, ¶ 5.  Plaintiff Candela Management Group, Inc. ("Candela") is "a corporation formed under the laws of the State of Ohio."  *Id.* at ¶ 7.  The individual plaintiffs, Kevin P. Casey and Francis Kovacs-Colon, are Ohio residents.  *Id*. at ¶¶ 8-9.  The *First Amended Complaint* alleges that Taco Maker is a Delaware corporation with its principal place of business in Utah.  *Id*. at ¶ 10.  The individual defendants are residents of Puerto Rico, *id.,* pp. 1-2, and are allegedly subject to jurisdiction in Ohio "by reason of having caused injury in this state[.]"  *Id*. at ¶¶ 11-14.  Plaintiffs also allege that "[v]enue in this district is proper, pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district."  *Id*. at ¶ 6.

Initially invoking 28 U.S.C. § 1406(a), Taco Maker moves to transfer this action to the United States District Court for the District of Puerto Rico as the only proper venue.  *Motion to Transfer*. Taco Maker also argues that, because of the forum selection clauses contained in the Development Agent Agreements and Franchise Agreements, the Court should apply the balancing test of 28 U.S.C. §1404(a) and transfer the action to the District of Puerto Rico.  *Id*. *See also Reply to Plaintiffs' Memorandum In Opposition to Motion to Transfer*, Doc. No. 26 ("*Reply*").

In response, plaintiffs contend that the *Motion to Transfer* should be denied because (1) the forum selection clauses are invalid; (2) Taco Maker improperly invokes 28 U.S.C. § 1406(a); and (3) a transfer is unwarranted even under 28 U.S.C. § 1404(a). *Plaintiffs' Memorandum in Opposition to Defendant's Motion to Transfer*, Doc. No. 18 ("*Memo. in Opp.*"); *Plaintiffs' Sur-Reply to Defendant The Taco Maker, Inc.'s Reply in Support of Its Motion to Transfer Venue*, Doc. No. 40 ("*Plaintiffs' Sur-Reply*").

**II.   STANDARD**

  **A.   28 U.S.C. § 1406(a)**

Section 1406 requires that a district court dismiss or transfer a case filed in an improper district or division. 28 U.S.C. § 1406(a). Accordingly, "Section 1406(a) applies only where venue is improper." *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 538 (6th Cir. 2002) (citing Van *Dusen v. Barrack*, 376 U.S. 612, 634 (1964) ("[Section] 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, [section] 1404(a) operates on the premise that the plaintiff has properly exercised his venue privilege.")).

  **B.   28 U.S.C. § 1404(a)**

Section 1404(a) authorizes the transfer of a civil action properly venued in one district to another district or division.

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district of division where it might have been brought.

28 U.S.C. § 1404(a). The party seeking transfer under 28 U.S.C. §

1404 bears the burden of establishing that the balance of relevant factors weighs "strongly in favor of transfer." *Centerville ALF v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1049 (S.D. Ohio 2002)(quoting *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951)). Ultimately, however, the decision whether to transfer venue under § 1404(a) is committed to the sound discretion of the trial court. *Midwest Motor Supply Co. Inc. v. Kimball*, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991).

"In ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including witnesses, as well as other public interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Centerville ALF, Inc.*, 197 F. Supp. 2d at 1049 (quoting *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). While there is no definitive list of factors that must be considered in determining whether a change of venue is warranted and to what district or division the action should properly be transferred, a district court may consider a number of case-specific factors. *Id*. Private interest factors include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947). Public interest factors include docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the

familiarity of the court with controlling law.  *Id*.

**III. DISCUSSION**

    **A.**   *Motion to Transfer* **Pursuant to 28 U.S.C. § 1406(a)**

Taco Maker has moved to transfer this action pursuant to 28 U.S.C. § 1406(a), arguing that the forum selection clauses identify Puerto Rico as the only proper venue.  *Motion to Transfer; Memo. in Opp.*, pp. 6-8.  Taco Maker apparently contends that the forum selection clauses render this venue improper.  *See Id*. (citing, *inter alia*, *Hoffman v. Burroughs Corp.*, 571 F. Supp. 545 (N.D. Tex. 1982); *Full-Sight Contact Lens Corp. v. Softlens Inc.*, 466 F. Supp. 71 (S.D. N.Y. 1978)).

In response, plaintiffs argue that Section 1406(a) is inapplicable because venue in this district is proper under 28 U.S.C. § 1391(a)(2).  *Memo. in Opp.*, pp. 4-5; *Plaintiffs' Sur-Reply*, pp. 3-4.  Plaintiffs contend that Section 1406(a) is not the proper vehicle to transfer this case even though the agreements contain forum selection clauses identifying Puerto Rico as a proper venue. *Plaintiffs' Sur-Reply*, pp. 3-4 (citing *Stewart v. Ricoh*, 487 U.S. 22 (1988); *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 536 (6th Cir. 2002)).

Plaintiffs' argument is well-taken.  As discussed *supra*, Section 1406(a) applies only if venue in this district is improper.  Venue is proper in a diversity case, except as otherwise provided by law, where "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"  28 U.S.C. § 1391(a)(2).  Here, plaintiffs specifically allege that a substantial

part of the events or omissions giving rise to the claims occurred in this district. *First Amended Complaint*, ¶ 6.  Because Taco Maker has not specified why venue in this district is improper under 28 U.S.C. § 1391, "a motion to transfer for improper venue will not lie." *Kerobo*, 285 F.3d at 536 (citing *Ricoh*, 487 U.S. at 28 n.8).  The existence of the forum selection clauses, even presuming the enforceability of these clauses, does not change this result.  *Id*. ("[T]he Supreme Court made it clear in *Ricoh* that forum selection clauses do not dictate the forum.").  *See also Blue Ash Dev. v. Polan*, No. 94-6324, 1996 U.S. App. LEXIS 1438, at *4 n.1 (6th Cir. Jan. 2, 1996) ("It does not appear under *Ricoh* that a forum selection clause makes the venue 'wrong' for § 1406 purposes when the action is filed in a district other than that specified in the clause.").  Accordingly, Taco Maker's *Motion to Transfer* based on 28 U.S.C. § 1406(a) is without merit.

> **B.    *Motion to Transfer* Pursuant to 28 U.S.C. § 1404(a)**

Taco Maker also argues that this Court should, in the exercise of its discretion, transfer venue pursuant to 28 U.S.C. § 1404(a).[4] *Motion to Transfer*, pp. 6-9; *Reply*, pp. 9-11 (citing *Affidavit of Tomas Torres Otero* ("*Otero Aff.*"), attached as Exhibit A to *Reply*).

---

[4] Plaintiffs argue that "Defendant's efforts to invoke Section 1404(a) are unavailing, because Defendant explicitly brought its transfer motion pursuant to Section 1406(a)." *Plaintiffs' Sur-Reply*, p. 4.  While it is true that the *Motion to Transfer* specifically moved pursuant to 28 U.S.C. § 1406(a), the motion also addressed Section 1404(a) and the relevant analysis under that statute.  *Motion to Transfer*, pp. 6-8.  Moreover, plaintiffs substantively responded to the Section 1404(a) arguments.  *See Memo. in Opp.*, pp. 7-12 (citing *Affidavit of Francis Kovacs-Colon in Opposition to Defendant's Motion to Transfer* ("*Kovacs-Colon Aff.*"), attached thereto as Exhibit A).  Under these circumstances, the Court will address the merits of the Section 1404(a) arguments.  *See Brown v. Local 58, IBEW*, 76 F.3d 762, 768 (6th Cir. 1996) ("The substance of the motion, rather than its form, controls our inquiry."); *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 194 (6th Cir. 1986) (noting the strong policy of deciding cases on their merits).

In connection with the *Motion to Transfer*, the parties disagree on whether or not the forum selection clauses contained in the Development Agent Agreements and the Franchise Agreements, which are in effect "except as otherwise expressly provided by applicable state law or regulation[,]" are valid and enforceable. Plaintiffs contend that the Ohio Business Opportunity Purchasers Protection Act ("OBOPPA"), O.R.C. § 1334.01 *et seq.*, and the Illinois Franchise Disclosure Act ("IFDA"), 815 Ill. Comp. Stat. § 705/1 *et seq.*, operate to invalidate the forum selection clauses. *Memo. in Opp.*, pp. 3-4; *Plaintiffs' Sur-Reply*, pp. 2-3. Conversely, Taco Maker contends that the agreements at issue are governed by the Federal Arbitration Act, which pre-empts the OBOPPA and IFDA. *Reply*, pp. 1-4. Accordingly, this Court is presented with the dilemma of whether it should first determine whether the clauses are valid under Ohio and Illinois state law or whether it should first consider the weight of these clauses under a Section 1404(a) analysis.

The United States Supreme Court previously addressed a similar dispute. *See Ricoh*, 487 U.S. 22. In *Ricoh*, the parties disagreed on whether Alabama state law may refuse to enforce forum selection clauses in the context of a motion to transfer pursuant to 28 U.S.C. § 1404(a). *Id.* at 29-30. The Supreme Court stated that

> [i]t is true that § 1404(a) and Alabama's putative policy regarding [disfavoring] forum-selection clauses are not perfectly coextensive. Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. . . . It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, whereas the coordinate state rule might dictate the opposite result.

*Id*. at 30-31 (internal citations omitted).  The Supreme Court determined that a forum selection clause "should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a)."  *Id*. at 31.  In so determining, the Supreme Court held that "federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case[.]"  *Id*. at 32.  *See also Kerobo*, 285 F.3d at 536 ("[W]hether the forum-selection clause should be given effect [i]s governed by federal law, specifically 28 U.S.C. § 1404(a).").[5]  Accordingly, this Court turns to the relevant analysis under Section 1404(a).

Courts apply a two-part test when evaluating a motion to transfer venue pursuant to 28 U.S.C. § 1404(a).  *See Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp.2d 941, 945 (S.D. Ohio 2002).  The threshold consideration is whether the action "might have been brought" in the transferee court.  *Id*. (citing 28 U.S.C. § 1404(a)).  Once a court determines that the plaintiff could have filed the action in another district, a court's decision to transfer depends on the balance of convenience and justice.  In this regard, the Court must consider both the private interests of the litigants and the public's interest  in the administration of justice.  *Id*. (citing *Gulf Oil v. Gilbert*, 330 U.S. at 508-09).  The moving party bears the burden of establishing

---

[5]In so ruling, the Court specifically rejected the dissent's argument that a forum selection clause should not be accorded any weight if the clause would be unenforceable under state law.  *Ricoh*, 487 U.S. at 31 n.10.  "Not the least of the problems with the dissent's analysis is that it makes the applicability of a federal statute depend on the content of state law."  *Id*.

that a change of venue is warranted.  *Id*. (citations omitted).  In making this determination, a trial court has considerable discretion based on a "case-by-case consideration of convenience and fairness."  *Ricoh*, 487 U.S. at 29.

### 1. Whether the action "might have been brought" in Puerto Rico

Although the parties do not specifically address whether this action "might have been brought" in the transferee court, the Court concludes that this action could have been filed in the United States District Court for the District of Puerto Rico.

In a diversity action, venue is proper in the district where all defendants reside.  28 U.S.C. § 1391(a)(1).  The parties agree that the individual defendants reside in Puerto Rico.  *First Amended Complaint*, pp. 1-2; *Otero Aff.* ¶ 9.  Plaintiffs allege that Taco Maker is a Delaware corporation with its principal place of business in Utah.  *First Amended Complaint*, ¶ 10.  However, "[f]or purposes of venue. . . a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  There is no dispute that Taco Maker willingly conducts business in Puerto Rico.  *First Amended Complaint*, ¶ 16; *Otero Aff*. ¶ 11.  Therefore, Taco Maker is subject to personal jurisdiction in Puerto Rico, *see*, *e.g.*, *Salgado-Santiago v. Am. Baler Co.*, 394 F. Supp. 2d 394, 402-06 (D. Puerto Rico 2005), and resides in Puerto Rico for purposes of venue.  28 U.S.C. § 1391(c).  Because the defendants in this matter are all residents of the District of Puerto Rico, then,

venue would be proper in that district.[6]  28 U.S.C. § 1391(a)(1).

### 2. Section 1404(a) considerations

The Court must now determine whether a transfer facilitates "the convenience of parties and witnesses" and is "in the interest of justice." To establish the Section 1404(a) factors, "conclusory allegations of a party will not suffice." *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001).

The plaintiffs are located in Ohio and the individual defendants are located in Puerto Rico. *First Amended Complaint*, pp. 1-2, ¶¶ 8-9; *Otero Aff.* ¶ 9. The parties disagree whether or not Taco Maker's principal place of business is Puerto Rico. *First Amended Complaint*, ¶ 10; *Motion to Transfer*, p. 8; *Memo. in Opp.*, p. 8. Based on this record and the near-equal division of the parties' locations, the Court cannot simply shift the inconvenience from Taco Maker to plaintiffs. *See*, *e.g.*, *Van Dusen v. Barrack*, 376 U.S. 612, 645-646 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient."); *Copeland Corp. v. Choice Fabricators, Inc.*, 492 F. Supp. 2d 783, 789 (S.D. Ohio 2005) ("It is axiomatic that a motion under § 1404(a) cannot be used to transfer the inconvenience of litigating in a distant court from the defendant to the plaintiff."). Accordingly, the Court is unable to conclude that Taco Maker, whose burden it is to justify the requested transfer, has established that the location of the parties militates in favor of transfer.

Moreover, "[t]he convenience of witnesses is said to be a

---

[6]The Court notes that venue may also have been proper in Puerto Rico pursuant to 28 U.S.C. § 1391(a)(2). *See Otero Aff.* ¶¶ 3-6, 8-9.

primary, if not the most important, factor in passing on a motion to transfer under § 1404(a)." *Midwest Motor Supply Co. v. Kimball*, 761 F. Supp. at 1318 (quoting *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 928 (W.D. Mo. 1985)) (internal quotation marks omitted). The moving party generally should provide the subject matter of each witness's anticipated testimony so that the Court can give the location of key witnesses more weight. *Audi AG and Volkswagon of America, Inc. V. D'Amato*, 341 F. Supp.2d 734, 750 (E.D. Mich. 2004). Here, both parties aver that several witnesses are present in Ohio and Puerto Rico. *Otero Aff.* ¶ 9[7]; *Kovacs-Colon Aff.* ¶ 5. However, Taco Maker does not provide a summary of each witness's anticipated testimony, thus impeding the Court's ability to assess the materiality of each witness. *See Otero Aff.* ¶ 9 (identifying some witnesses' involvement simply as "met with plaintiffs" and "accused of" wrongdoing). Based on the present record, the Court cannot conclude that the convenience of the witnesses weighs in favor of transfer.

Plaintiffs also represent that their documents and business records, including records relating to the development agreements in South Carolina and Illinois and the South Carolina franchise agreement, are located in Ohio. *Kovacs-Colon Aff.* ¶ 4. Conversely, Taco Maker contends that its documents are located in Puerto Rico. *Otero Aff.* ¶¶ 11-12. Accordingly, this factor appears to be neutral.

---

[7]Plaintiffs argue that the Court should not consider Taco Maker's new evidence in support of its Section 1404(a) argument, which was raised for the first time in reply. *Plaintiffs' Sur-Reply*, pp. 4-5. However, the Court previously denied plaintiffs' motion to strike the *Reply* and permitted plaintiffs to file a sur-reply. *Order*, Doc. No. 39. Accordingly, the Court will consider this evidence. *Cf. Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 194 (6th Cir. 1986).

As discussed *supra*, the existence of forum selection clauses designating Puerto Rico as the appropriate venue militate in favor of transfer.

Plaintiffs contend that "substantial part of the events and omissions" occurred in Ohio. *First Amended Complaint*, ¶ 6. However, Taco Maker argues that negotiations and investigation of business operations occurred in Puerto Rico. *See Otero Aff.* ¶¶ 9-11. Considering the present record, the locus of operative facts does not favor one venue over the other. This state of equipoise, however, favors the Ohio venue.

Finally, a plaintiff's choice of forum should be accorded great weight. *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508. ("Unless the balance is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed."); *Hobson v. Princeton-New York Investors, Inc.*, 799 F. Supp. 802, 804 (S.D. Ohio 1992). Here, plaintiffs' chosen forum is Ohio.

Considering all the relevant factors, then, the Court concludes that this action is properly venued in this district and Taco Maker has not met its burden of establishing that transfer to Puerto Rico is warranted.

**WHEREUPON**, defendant The Taco Maker, Inc.'s *Motion to Transfer Venue*, Doc. No. 13, is **DENIED**.


September 11, 2009                    *s/Norah McCann King*
                                  Norah M<sup>c</sup>Cann King
                              United States Magistrate Judge